UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GALE THURSTON, Personal
Representative of the Estate of
PAUL THURSTON,

                File No. 1:10-cv-373

Plaintiff,

                HON. ROBERT HOLMES BELL

v.

MONTCALM COUNTY SHERIFF'S
DEPARTMENT; SERGEANT ROBERT
SILVERTHORN; CORRECTIONS
OFFICER BRIAN BRECKER;
CORRECTIONS OFFICER KEVIN
BRECKER; CORRECTIONS OFFICER
 RICHARD MICHAELS; CORRECTIONS
OFFICER ADAM SIMON; CORRECTIONS
OFFICER TODD CHRISTENSEN;
SANA GAFFNEY, R.N., individually,
jointly, and severally,

Defendants.
                /

**O P I N I O N**

This matter is before the Court on motions for summary judgment by defendants Montcalm County Sheriff's Department, Robert Silverthorn, Brian Brecker, Kevin Brecker, Richard Michaels, Adam Simon, and Todd Christensen (collectively the "Montcalm County Defendants") (Dkt. No. 72) and by Defendant Sana Gaffney (Dkt. No. 79). For the reasons that follow, the motions will be granted.

**I. Background**

On the night of April 19-20, 2008, Paul Thurston was arrested for assault and battery

following an incident in a local bar in Greenville. He was transported to the Montcalm County Sheriff Department ("Department") where he was booked at around 2:30 a.m. by Defendant officers Simon and Christensen. During the medical screening portion of the intake, Thurston advised Defendant Officer Simon that he was allergic to penicillin, but, according to Defendants, denied having any other allergies. Although the intake medical form makes no mention of a peanut allergy, Plaintiff points out that the intake form has a number of inaccuracies, including answering a question regarding withdrawal in the negative despite the fact that Mr. Thurston said he would have withdrawals from methadone and had turned over a methadone prescription.[1] Plaintiff alleges that no consideration was given to Mr. Thurston's medical needs as related to methadone withdrawal.

After booking, Thurston was placed in a detox cell where all pre-trial detainees are held. Thurston was very concerned about missing his morning dose of methadone and the possibility of suffering severe withdrawal symptoms. Thurston called his father at 5:50 a.m., stating "[P]lease, you just gotta understand, I'm on methadone, and they don't get methadone here, and I'm gonna get very, very sick . . . This is the thing -- I just need my methadone. I've got it at Gale's house, I need that before I can think -- I'll take care of the rest." (Dkt. No. 96 at 3.) Thurston's cellmate, Marc Ackley, reported that Thurston was "constantly" saying he "needed to get out of jail so that he could get his Methadone to avoid withdrawals."

---

[1] Methadone is typically used to prevent withdrawal symptoms in patients who were addicted to opiate drugs and are enrolled in treatment programs in order to stop taking or continue not taking the drugs.

2

Shortly after noon, Defendant Officer Michaels delivered two bag lunches to the door of Thurston's cell; one each for Thurston and his cell mate, Marc Ackley. The bag lunches included peanut butter sandwiches. Thurston took his without asking any questions about what was being served. Security camera footage shows Thurston examining the sandwiches and then taking several bites. After taking bites out of one sandwich, Thurston became agitated. Thurston stood up, went to the cell door and reported that he was allergic to peanuts and would need epinephrine and an ambulance.

Within moments, Defendant Officer Micahels approached Thurston's cell and spoke with Thurston. He then called for the jail nurse to report to booking. Shortly after, Defendant Nurse Gaffney arrived. Nurse Gaffney testified at her deposition that she spoke with Thurston and listened to his concerns, including his report of a previous incident at Kent County Jail, in which Thurston had consumed peanut butter and required three days of hospitalization. This exchange presumably occurred during one of the periods when Thurston remained at his cell door. While questioning Thurston, Nurse Gaffney states that she made observations for signs of physical distress. Finding none at that time, and noting that intake forms indicated no allergies to food, Nurse Gaffney decided to call Kent County Jail to verify the peanut allergy. Phone records indicate this call was placed at 12:12 p.m, and lasted around five minutes.

Security footage shows that, during this time, Thurston moved back and forth between the cell door and toilet, alternately communicating with corrections officers and attempting

3

to induce vomiting. At one point, Defendant Officer Michaels entered the cell and offered Thurston's cell mate, Marc Ackley, the option of being moved to another cell. Ackley accepted, and Officer Michaels escorted him out. Officer Michaels returned to Thurston's cell at and spoke with him again.

The Kent County Jail confirmed Thurston's allergy. Thurston was then let out of his cell and escorted by Nurse Gaffney and Officer Michaels to the medical office. Nurse Gaffney directed Sgt. Silverthorn to call an ambulance. According to the 911 radio traffic the call was placed at 12:20:52. According to EMS records, an ambulance was dispatched at 12:22. After getting to the medical office, Thurston became symptomatic with wheezing, a flushed face and increased agitation. Gaffney examined him and attempted to take vital signs, however was not successful due to Thurston's agitation. Meanwhile, Officer Brian Brecker, an EMT-Specialist, came to the medical office to assist. He thought he had seen an EpiPen in the medical supply room that had belonged to previous detainee. He and Nurse Gaffney searched for the item in the locked supply room but did not find it.

Officer Kevin Brecker, also an EMT-Specialist, entered the medical office to prep the noon time medication for the inmates. Upon entering, he was questioned by Nurse Gaffney as to when the ambulance was going to arrive. He then observed Thurston in the exam room with Officer Michaels, who was attempting to calm Thurston down. A decision was made to move Thurston to the Sally Port (receiving garage) because his condition was worsening and he would be closer to access and transport by the ambulance when it arrived. Thurston

was moved to the Sally Port by wheelchair, at which time he became even more distressed, at some point losing consciousness. At the Sally Port, Thurston was moved to the floor so that the EMT-Specialists could work on him while Nurse Gaffney ventilated him with an ambu-bag. The officers applied an AED, which indicated no shock.

Gaffney continued with CPR until the rescue unit and EMS arrived and took over care. The EMS records indicate the first unit arrived at 12:30 p.m. with the first procedure performed at 12:31 p.m. Thurston was transported to Sheridan Hospital where he was pronounced dead at 1:10 p.m. The cause of death was "Asphyxia Secondary to Allergic Reaction to Peanut Butter." (Complaint ¶¶ 41-42). Plaintiff Gale Thurston is the personal representative of the estate of the deceased Paul Thurston. Plaintiff alleges that Defendants unduly delayed and withheld medical treatment. Plaintiff argues that slow response times, the decision to delay action while verifying Mr. Thurston's claim of a peanut allergy with Kent County, and failure to administer effective treatment proximately caused Paul Thurston's death. Plaintiff is suing for constitutional violations of the fourth, eighth, and fourteenth amendments (Count I) and wrongful death (Count II).

## II. Legal Standards

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to

determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendant carries his burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III. Constitutional Claims

Plaintiff claims that Defendants violated Mr. Thurston's constitutional rights by failing to provide timely medical care. To establish a cognizable constitutional claim for failure to provide medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The "deliberate indifference" standard has both an objective and a subjective

6

component. *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). The objective component of a claim of deliberate indifference requires a medical need that is "sufficiently serious." *Id.* (citing *Farmer v Brennan*, 511 U.S. 825, 834 (1994)). A medical need is objectively serious where a plaintiff's claims arise from an injury or illness "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004).

The subjective component of a constitutional claim of deliberate indifference toward serious medical needs requires the plaintiff to show that prison or jail officials have a sufficiently culpable state of mind in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Plaintiff must present evidence showing that a defendant subjectively perceived facts from which to infer a substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). Even "in cases where prison officials 'actually knew of a substantial risk to inmate health or safety [, they] may be found free from liability if they reasonably respond to the risk, even if the harm ultimately was not averted.'" *Harrison v. Ash*, 539 F.3d 510, 519 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 844). This subjective standard "is meant to prevent the constitutionalization of medical malpractice claims." *Comstock*, 273 F.3d at 703. "[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." *Estelle*, 429 U.S. at 106.

7

Defendants assert that they are entitled to summary judgment on the basis of qualified immunity. The Supreme Court has held that "governmental officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). A right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

**A. Montcalm County Defendants**

The Montcalm County Defendants do not contest that Thurston had a serious medical condition, or that several of the individual Montcalm County Defendants at some point became subjectively aware of that condition. Their position is simply that there is no evidence that any of the Montcalm County Defendants were deliberately indifferent to Thurston's medical condition. Upon review of the record pertaining to each of these defendants, the Court agrees.

Two of the Moncalm County Defendants — Officers Simon and Chistensen — were not working on the morning of the incident. Plaintiff alleges that these officers committed errors and failed to follow prison policies during intake booking. However, even assuming

8

that these errors contributed to the unfortunate events the following morning, Plaintiff's allegations against these officers do not amount to a constitutional violation. As Thurston did not suffer a medical emergency while these officers were on duty, there is no possibility that they were deliberately indifferent to a serious medical condition.

Officer Michaels was the first person to interact with Thurston after he consumed the peanut butter sandwich. The record shows that Officer Michaels came to Thurston's cell within moments of Thurston's first complaint. After listening to Thurston claim an allergy to peanuts, it is undisputed that he immediately called for the nurse to come to booking. Plaintiff argues that Michaels' failure to immediately call an ambulence and his concern for Thurston's cellmate indicate that Michaels did not take Thurston's condition "seriously" and amounted to deliberate indifference. However, promptly calling for an on-site medical professional cannot be taken as deliberate indifference under the circumstances. Nurse Gaffney arrived within moments, and Michaels remained present to assist as requested. Thurston was not symptomatic while in his cell, and Michaels had no reason to believe that Thurston's potential medical condition was not being assessed and addressed by Nurse Gaffney. Moving Thurston's cellmate into a different cell is not evidence of deliberate indifference with respect to Thurston.

Plaintiff's sole allegation against Sergeant Silverthorn is that, although he heard Thurston say he was allergic to peanut butter and observed portions of Thurston's interactions with Officer Michaels and Nurse Gaffney, he did not immediately call an

9

ambulance. The record is clear that Silverthorn did call an amblance at 12:20 after receiving instructions to do so from Gaffney. Later, he covered Brian Brecker's position at control so that Brecker could search for an epi-pen. By all accounts, Sergeant Silverthorn had no direct interaction with Thurston, but saw that the resident nurse and other officers were already interacting with him and responding to his concerns. It would be unreasonable to hold that every person on staff at the jail was constitutionally required to focus on Thurston when he was already being seen by the jail nurse and other officers. Additionally, Segeant Silverthorn never observed Thurston while symptomatic. On these facts, there is no basis for concluding that Silverthorn was deliberately indifferent to Thurston's medical needs.

Officers Brian and Kevin Brecker had no contact with Thurston until after the ambulance had been called and Thurston had been taken to the medical room. Both Officers are EMT specialists. Against these defendants, Plaintiff's allegations appear to be (1) they neglected to bring allegedly obvious medical equipment to the sally port, and (2) Brian Brecker's "taking Nurse Gaffney with him to look for an EpiPen he thought might have been left over by a previous detainee unreasonably left Paul Thurston without any medically trained personnel attending him . . . ." (Dkt. no. 96 at 15-16.) Neither of these allegations rise to the level of deliberate indifference. At most, they are allegations of ordinary negligence which are barred by qualified immunity.

The Court finds that, on the facts alleged and supported by the record, no reasonable jury could find that any of these officers were deliberately indifferent to Thurston's serious

10

medical condition. At all times after Plaintiff announced his condition, someone was working towards addressing the issue. Even if, as Plaintiff alleges, certain defendants harbored initial doubts regarding the sincerity of Thurston's claimed emergency, it is clear that the jail nurse was promptly called to examine him.

Furthermore, any doubts which the Montcalm County Defendants may have initially had regarding the seriousness of Thurston's claimed medical condition would not work in Plaintiff's favor. The standard for deliberate indifference is only met if an officer actually determines that a serious medical condition exists. If the Montcalm County Defendants did not believe that Thurston had a serious medical condition until after confirmation of his allergy by Kent County and/or the onset of allergic symptoms, then they could not have been deliberately indifferent. Only at the point where each defendant understood that a serious medical emergency existed did the constitutional obligation to provide timely medical care arise. There is no dispute that an ambulance was called immediately after confirmation of Thurston's allergy by Kent County Jail, and before Thurston displayed any obvious symptoms of an allergic reaction. Under these facts, Plaintiff has not met his burden in showing that any of the Montcalm defendants had a sufficiently culpable state of mind in denying medical treatment. Accordingly, the Montcalm County Defendants are entitled to qualified immunity and summary judgment on Plaintiff's constitutional claims.

**B. Nurse Sana Gaffney**

The crux of Plaintiff's deliberate indifference claim against Nurse Gaffney is that she

11

"made a decision to delay and withhold medical treatment in order to obtain confirmation" of Thurston's peanut allergy. (Dkt. No. 1 at ¶ 34.) Nurse Gaffney placed a call to Kent County Jail to confirm the allergy, and the call lasted for approximately five and a half minutes. Plaintiff contends that this delay may have cost Thurston his life and amounted to deliberate indifference.

The Court notes that there are several undisputed facts which support the reasonableness of Plaintiff's decision to call Kent County. First, the intake forms for Thurston indicate that he denied any allergy to peanuts.[2] Second, Nurse Gaffney testified that Thurston displayed no symptoms of an allergic reaction when that decision was made. Third, it was Thurston himself who suggested calling Kent County Jail to confirm a previous incident. And finally, one might feel a degree of inescapable skepticism that an adult with a severe peanut allergy would consume a plain peanut butter sandwich. Given these considerations, the Court finds that Nurse Gaffney's decision to confirm Thurston's allergy with the Kent County Jail was not indicative of a sufficiently culpable state of mind to support a claim of deliberate indifference.

Furthermore, contrary to Plaintiff's argument, Nurse Gaffney's decision to call Kent County Jail demonstrates action, not indifference. Regardless of any skepticism she may have felt, Nurse Gaffney did not ignore Thurston, but observed him for symptoms and, seeing none, made a call to gather additional information. Whether or not this was a sound

---

[2] Whether or not this was an error has no bearing on evaluating Nurse Gaffney's state of mind.

medical decision, it was not deliberate indifference. With the benefit of hindsight, the wiser course may have been to call an ambulance immediately. Indeed, if the standard before the Court were one of simple negligence, summary judgment would not be appropriate. However, there is no basis for drawing the inference that Nurse Gaffney was deliberately indifferent to a perceived serious medical condition. Because Plaintiff has not supported a constitutional violation, Nurse Gaffney is entitled to summary judgment. *See Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("The provision of careless medical treatment to a prisoner does not demonstrate the display of a deliberate indifference to the prisoners' needs; rather, such constitutes merely a degree of incompetence which does not rise to the level of a constitutional violation.").

### IV. Wrongful Death

Plaintiff also seeks relief under tort law for wrongfull death "[a]s a result of Defendants' negligence, deprivation of constitutional rights, or deliberate indifference, which proximately caused Defendent's death . . . ." (Dkt. No. 1 at ¶ 55.) As discussed above, Plaintiff has not met his burden in supporting a claim of deliberate indifference or any other constitutional deprivation. As to negligence, Michigan law grants immunity to governmental employees for injuries caused in the course of their employment unless the employees' conduct amounts to "gross negligence." Mich. Comp. Laws § 691.1407(2). The Court will grant Plaintiff the benefit of considering gross negligence as the basis of his wrongful death claim. Gross negligence is defined by the statute as "conduct so reckless as to demonstrate

13

Case 1:10-cv-00373-RHB Doc #121 Filed 03/29/12 Page 14 of 14 Page ID#1304

a substantial lack of concern for whether an injury results." *Id.*

Although the parties have not undertaken an extensive application of the present facts to the gross negligence standard, it is akin to the burdensome standard for deliberate indifference. *Farmer*, 511 U.S. at 836 ("With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness.") Following the same reasoning, the Court finds that Plaintiff has not presented sufficient evidence to support a claim of gross negligence. The record indicated that the defendants did not act recklessly or demonstrate a substantial lack of concern for his welfare. Accordingly, all defendants are entitled to qualified immunity and summary judgment on Plaintiff's wrongful death claim.

## V. Conclusion

The Court finds that the Montcalm County Defendants and Defendant Sana Gaffney are entitled to qualified immunity and summary judgment on all of Plaintiff's constitutional claims. The Court also finds that all defendants are entitled to summary judgment on Plaintiff's claim of wrongful death. Accordingly, the motions for summary judgment filed by the Montcalm County Defendants (Dkt. No. 72) and Defendant Sana Gaffney (Dkt. No. 79) will be granted. An order consistent with this opinion will be entered.

Dated: March 29, 2012 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE